# United States District Court

### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

MELODY YIRU, an individual, and all those   §
similarly situated,   §
      Plaintiffs,   §
  §
            v.   §      CASE NO. 3:17-CV-02155-S
  §
WORLDVENTURES HOLDINGS LLC,   §
et al.,   §
      Defendants.   §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings [ECF No. 64]. For the reasons that follow, the Court grants the Motion.

## I. BACKGROUND OF THE CASE

Per Special Order 3-318, this case was transferred from the docket of Judge David C. Godbey to the docket of this Court on March 8, 2018.

Plaintiff Melody Yiru ("Plaintiff") brings this action against Defendants WorldVentures Holdings, LLC, World Ventures, WorldVentures Foundation, WorldVentures Marketing, LLC, Michael Azcue[1], Wayne Nugent, and Daniel Stammen (collectively, "Defendants"). Plaintiff's claims arise from her status as a WorldVentures Representative. Plaintiff became a WorldVentures Representative in September 2015. Compl. ¶ 7. WorldVentures sells travel-related services based on club membership through its sales representatives. *Id.* ¶ 33. According to Defendants, "By paying an initial fee and a recurring monthly fee, Plaintiff had access to

---

[1] Defendants do not bring this motion on behalf of named Defendant Michael Azcue, nor do they make any representations regarding Azcue. According to Defendants, Aczue had not be served with the Complaint at the time of the filing of this motion.

WorldVentures' online platform which provided all of the tools that Plaintiff needed to operate a business selling WorldVentures' travel memberships." Mot. 2. Plaintiff alleges that Defendants run an illegal pyramid scheme. Compl. ¶ 4.

Defendants move to compel Plaintiff to submit any claim or dispute between Plaintiff and Defendants to binding arbitration pursuant to both the Representative Agreement and WorldVentures' Policies and Procedures. Mot. 1. Defendants also request that the Court dismiss the matter, or issue a stay pending the resolution of the arbitration proceeding. *Id.*

According to Defendants, this dispute is governed by the arbitration provision to which Plaintiff agreed when she applied to become a WorldVentures Representative in September 2015 (the "Arbitration Provision"). *Id.* at 3. The Arbitration Provision is set forth as ¶ 12 of a single page of Representative Terms and Conditions (the "Terms") and in § 9.4 of the Statement of Policies and Procedures (the "Policies"). *Id.* at 4.

Paragraph 12 of the Terms reads, in pertinent part:

> This Agreement will be governed by and construed in accordance with the laws of the State of Texas, without regard to principles of conflicts of laws. All disputes and claims relating to WorldVentures, the Agreement, or WorldVentures products and services, the rights and obligations of an independent Representative and WorldVentures, or any other claims or causes of action relating to the performance of either an independent Representative or WorldVentures under the Agreement shall be settled totally and finally by arbitration in Dallas, Texas, or other such location as WorldVentures prescribes, in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association, except that all parties shall be entitled to discovery rights allowed under the Federal Rules of Civil Procedure. All issues related to arbitration shall be governed by the Federal Arbitration Act. . . . Nothing in the Agreement shall prevent WorldVentures from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or other relief available to safeguard and protect WorldVentures' interest prior to, during or following the filing of any arbitration or other proceeding or pending the decision or award in connection with any arbitration or proceeding.

Defs.' App. 008 ¶ 12.

Likewise, § 9.4 of the Policies reads, in pertinent part:

**Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.** Representatives waive all rights to trial by jury or to any court. All arbitration proceedings shall be held in the City of Dallas[,] Texas, unless the laws of the state in which a Representative resides expressly require the application of its laws, in which case the arbitration shall be held in the capital of that state.

[. . .]

Nothing in these Policies and Procedures shall prevent WorldVentures from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or other relief available to safeguard and protect WorldVentures' interest prior to, during or following the filing of any arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding.

Notwithstanding the foregoing, the arbitrator shall have no obligation or jurisdiction over disputes relating to the ownership, validity or registration or any mark of other intellectual property or proprietary or confidential information of the Company, without the Company's written consent. . . . In addition to monetary damages, the Company may obtain injunctive relief against a Representative in violation of the Agreement, and for any violation of misuse of the Company's trademark, copyright [o]r confidential information policies.

. . . Nothing contained herein shall be deemed to give the arbitrator any authority, power, right to alter, change, amend, modify, add to, or to subtract from any provisions of the Policies or Procedures, Compensation Plan or the Representative Agreement.

Defs.' App. 039 § 9.4 (emphasis in original).

Plaintiff opposes the motion, arguing that: (1) Defendants fail to demonstrate the existence of an arbitration agreement; (2) the purported arbitration agreement is illusory; (3) Plaintiff's factual allegations fall outside the scope of the purported arbitration agreement; (4) the purported arbitration agreement is unconscionable; and (5) the individual Defendants cannot compel arbitration. *See* Resp. 6-19.

## II. LEGAL STANDARD

Pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

Enforcement of an arbitration agreement involves two analytical steps. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The first is contract formation—whether the parties entered into any arbitration agreement at all. *Id.* The second involves contract interpretation to determine whether the claim is covered by the arbitration agreement. *Id.* Ordinarily, both steps are questions for the Court. *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *Id.* Delegation clauses are enforceable and transfer the Court's power to decide arbitrability questions to the arbitrator. *Id.* at 201-02. Thus, a valid delegation clause requires the Court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. *Id.* at 202 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

If the party seeking arbitration points to a purported delegation clause, the Court's analysis is limited. *Id.* It performs the first step—an analysis of contract formation—as it always does. *Id.* But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases. *Id.*

Issues of validity and scope are governed by state-law contract principles. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). Here, Texas law governs both the Terms and the Policies. Defs.' App. 008 ¶ 12, 039 § 9.5

## III. ANALYSIS

### *(1) Contract Formation*

When a party seeks to compel arbitration based on a contract, the first question is whether there is a contract between the parties at all. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018); *see also Kubala*, 830 F.3d at 201-02. In conducting this inquiry, the Court distinguishes between "validity" or "enforceability" challenges and "formation or existence" challenges. *Homeaway*, 890 F.3d at 550 (citing *Rent-A-Ctr.*, 561 U.S. at 70 n.2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). Though the difference between formation and validity may be unclear at the margins, the Supreme Court has suggested that the category of arguments that question the very existence of an agreement include "whether the alleged obligor ever signed the contract." *Id.* (quoting *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1). "[I]t is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract." *Will-Drill Res., Inc.*, 352 F.3d at 218.

Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018); *see also USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). The parties dispute whether or not Plaintiff consented to the Arbitration Provision.

The Arbitration Provision at issue involves a clickwrap agreement. "A 'clickwrap agreement' allows a consumer to assent to the terms of a contract by selecting an 'accept' button on the website," and "[i]f the consumer does not accept the terms of the agreement, the website will not complete the transaction." *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 905 n.15 (N.D. Tex. 2000). It is well established under Texas law that assent through an affirmative "click" is sufficient to bind the parties. *See, e.g.*, *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718-20 (N.D. Tex. 2013) (finding "valid clickwrap agreement" where party was required to assent to terms before progressing in online transaction); *Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 156 (Tex. App.—San Antonio 2006, no pet.) ("By clicking 'I agree to the Terms and Conditions,' the consumer presumably selected to follow through with the contract, consciously aware of the additional terms and conditions and their availability."); *Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, rev. denied) (upholding forum-selection clause presented as part of online registration agreement because "it was [plaintiff's] responsibility to read the electronically-presented contract, and he cannot complain if he did not do so").

In order to proceed with the application and enrollment process to become a WorldVentures Representative, Plaintiff had to click a box to affirm her agreement with the relevant terms and conditions. *See* Mot. 3; Defs.' App. 002-06. Specifically, Plaintiff was required to click a box affirming: "I/we have read the terms and conditions of 1. The Representative Agreement, including the terms and conditions 2. The Policies and Procedures Form 3. and The Compensation Plan ("the Agreement") before making this application." Defs.' App 003. By clicking her affirmation that she had received and reviewed the terms and conditions of the Representative Agreement and the Policies, Plaintiff assented to being bound by the terms and

conditions of the same. *See id.* at 002-06. It would not have been possible for Plaintiff to enroll as a WorldVentures Representative if she had not first affirmatively clicked the box indicating that she assented to the Terms and the Policies. *See id.* at 006; *see also Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006) ("Without accepting the terms of the license, installation is impossible. Therefore, the Court finds that the record evidence is sufficient to support the conclusion that [Defendant] could not have incorporated Voyager 2.0.1 in the software without clicking 'Yes' to the terms of the license agreement." (internal citations omitted).

Additionally, Plaintiff's lawsuit is based on her status as a former WorldVentures Representative. Her claims presume the existence of a contract. *See, e.g.*, Compl. ¶ 7 ("Yiru became [a] WorldVentures representative in September of 2015."); Resp. 3 ("Plaintiff became a WorldVentures' Representative in September of 2015, and lost $2,675 pursuing the opportunity.") Clearly, if Plaintiff did not accept the terms of the agreement, then she could not be a WorldVentures Representative, and all of her claims would fail as a matter of law. Plaintiff does not deny that she enrolled as a WorldVentures Representative online or that she clicked to affirm her agreement with the relevant terms and conditions. Plaintiff, however, contends that Defendants fail to identify "any security measures designed to ensure that only Plaintiff could have 'clicked' the box, and [do] not indicate in any way how Plaintiff would be informed that 'all of the Terms' supposedly included such an agreement to arbitrate." Resp. 7. This argument is unavailing. Plaintiff cites to no legal authority indicating that Defendants are required to make such a showing. Moreover, Plaintiff does not deny that she clicked the box and she admits to enrolling as a WorldVentures Representative. *See, e.g.*, Compl. ¶ 7 ("Yiru became a WorldVentures representative in September of 2015."). Plaintiff moved forward under the terms

of the contract. *See, e.g., id.* ¶ 2 ("Plaintiff . . . failed even though [she was] committed and put in the time and effort."). Now Plaintiff brings this action based on her status as a WorldVentures Representative. *See, e.g., id.* ¶ 6 ("Plaintiff sues for herself and for all persons who were WorldVentures Representatives from May 2010 until the present . . . ."). To argue that no contract exists between the parties or that it was not Plaintiff who clicked the box to enroll is disingenuous in light of the fact that Plaintiff is bringing this suit as an aggrieved WorldVentures Representative.

The Court finds that Defendants have provided sufficient evidence to establish that a contract, including an arbitration provision, exists between the parties. Plaintiff has provided no evidence to the contrary—only her speculative and conclusory allegations. Assent through an affirmative "click" is sufficient to bind the parties under Texas law. Therefore, the Court finds that a contract, including an arbitration provision, exists between the parties.

### (2) Scope of the Arbitration Agreement

The second step for the Court in considering a motion to compel arbitration is to determine whether the claim at issue falls within the scope of the arbitration agreement. *Kubala*, 830 F.3d at 201. But if the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *Id.* The presence of a delegation clause requires the Court to inquire: Who should have the primary power to decide whether the claim is arbitrable? *Id.* at 201-02. Delegation clauses are enforceable and transfer the Court's power to decide arbitrability questions to the arbitrator. *Id.* at 202. Therefore, a valid delegation clause requires the Court to refer a claim to arbitration to decide gateway arbitrability issues. *Id.* "Gateway" questions of "arbitrability" include whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Ctr.*, 561 U.S. at 68-69. If a party seeking arbitration points to a purported delegation clause, the Court's analysis is

8

narrowed. *Kubala*, 830 F.3d at 202. The Court performs the first step—an analysis of contract formation—as it always does. *Id.* "But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.*

Defendants contend that the Arbitration Provision contains a delegation clause. *See* Mot. 6 ("[B]oth provisions clearly set forth that any arbitration will be governed by the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association."); *see also* Defs.' Supp. Br. 5-6 ("Plaintiff and WorldVentures formed a contractual agreement, which contains an arbitration provision, and which itself contains a delegation clause."). Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. *Homeaway*, 890 F.3d at 551 (citing *Rent-A-Ctr.*, 561 U.S. at 68-70). However, the Court may not assume that parties have agreed to arbitrate threshold issues absent clear and unmistakable evidence of their intent to do so. *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)).

The Fifth Circuit has held that, generally, stipulating that the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules") will govern the arbitration of disputes constitutes such "clear and unmistakable" evidence. *Id.* (citing *Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co.*, 687 F.3d 671, 674-75 (5th Cir. 2012)). The AAA Rules state, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AM. ARBITRATION ASSOC., COMMERCIAL ARBITRATION RULES & MEDIATION PROC. R-7(a) (2013), https://www.adr.org/rules.

Here, the Arbitration Provision explicitly stipulates that the AAA rules will govern the arbitration of disputes:

> All disputes and claims relating to WorldVentures, the Agreement, or WorldVentures products and services, the rights and obligations of an independent Representative and WorldVentures, or any other claims or causes of action relating to the performance of either an independent Representative or WorldVentures under the Agreement shall be settled totally and finally by arbitration in Dallas, Texas, or other such location as WorldVentures prescribes, *in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association*.

Defs.' App. 008 ¶ 12, 039 § 9.4 (emphasis added). Accordingly, the Court finds that there is clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability and scope to the arbitrator.

Plaintiff, however, argues that the "wholly groundless" exception applies in this case. Regardless of whether an agreement clearly and unmistakably delegates the question of arbitrability, the Fifth Circuit provides a "narrow escape valve" when the assertion of arbitrability is "wholly groundless." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 495 (5th Cir. 2017). An assertion of arbitrability is "wholly groundless" when there is no plausible argument for the arbitrability of the dispute. *Id.* at 492. The Fifth Circuit has cautioned that the "wholly groundless" exception is a narrow one and "is not a license for the court to prejudice arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause." *Id.* at 495 (quoting *Kubala*, 830 F.3d at 202 n.1).

> An assertion of arbitrability is not "wholly groundless" if there is a legitimate argument that the arbitration clause covers the present dispute, and, on the other hand, that it does not. If a court can find a plausible argument that the arbitration agreement requires the merits of the claim to be arbitrated, the wholly groundless exception will not apply.

*Id.* (internal citations and quotations omitted).

The Fifth Circuit initially adopted the "wholly groundless" exception in *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014), and most recently applied it in *Archer*.[2] *Id.* at 492. In *Archer*, the Fifth Circuit held that the "wholly groundless" exception applied, and that it was for the court, and not the arbitrator, to decide the question of arbitrability. *Id.* at 497. The arbitration clause at issue in *Archer* read:

> Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement *(except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane)*, shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be in Charlotte, North Carolina.

*Id.* at 491 (emphasis added). The Fifth Circuit noted that the arbitration clause created a carve-out for actions seeking injunctive relief, one type of relief requested by the plaintiff in the suit. *Id.* at 491, 497. While noting that *Douglas* is a recent case and the contours of the "wholly groundless" exception were not yet fully developed, the Fifth Circuit stated, "[I]f the doctrine is to have any teeth, it must apply where, as here, an arbitration clause expressly excludes certain kinds of disputes." *Id.* at 497. The Fifth Circuit ultimately held, "We see no plausible argument that the arbitration clause applies here to an 'action seeking injunctive relief.'" *Id.*

Plaintiff argues, "Like in *Archer* . . . , the parties here had no intent to delegate this dispute over the claims in this litigation to AAA." Pl.'s Supp. Br. 6. Plaintiff contends that the Court should apply the "wholly groundless" exception because (1) rescission is "carved out from the purview of the arbitrator's authority and power," and (2) "injunctive relief is only available to the Defendants, but not available to Plaintiff." *Id.*

---

[2] The United States Supreme Court recently granted certiorari in *Archer* on June 25, 2018. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 138 S. Ct. 2678 (2018).

The Court finds that the case at hand is distinguishable from *Archer*, and the wholly groundless exception does not apply. First, unlike *Archer*, the plain language of the Arbitration Provision in the Terms and Policies does not create a "carve-out clause remov[ing] the disputes from the ambit of both arbitration and the AAA Rules." *Archer*, 878 F.3d at 493. The Arbitration Provision states:

> ***All disputes and claims*** relating to WorldVentures, the Agreement, or WorldVentures products and services, the rights and obligations of an independent Representative and WorldVentures, or any other claims or causes of action relating to the performance of either an independent Representative or WorldVentures under the Agreement ***shall be settled totally and finally by arbitration*** in Dallas, Texas, or other such location as WorldVentures prescribes, ***in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association***.

Defs.' App. 008 ¶ 12, 039 § 9.4 (emphasis added). The plain language clearly states that *all disputes and claims* must be settled by arbitration and that *all disputes and claims* are subject to the AAA Rules. There is no "except for" or other exclusionary language in the provision.

Second, nothing in the Arbitration Provision prohibits the rescission of the parties' contract. Section 9.4 of the Policies does go on to state in a later paragraph: "Nothing contained herein shall be deemed to give the arbitrator any authority, power, right to alter, change, amend, modify, add to, or to subtract from any of the provisions of the Policies or Procedures, Compensation Plan or the Representative Agreement." *Id.* at 039 § 9.4. Plaintiff argues that the "crux of Plaintiff's action is to seek rescission . . . which is carved out from the purview of the arbitrator's authority and power." Pl.'s Supp. Br. 7. The Court disagrees. The clause does state that the arbitrator may not effectively rewrite the provisions of the agreement; however, the clause does not limit the legal remedies available to Plaintiff, including rescission of the agreements in their entirety.

Finally, Plaintiff is not prohibited from seeking injunctive relief in arbitration. The Arbitration Provision does allow WorldVentures to seek injunctive relief. *See* Defs.' App. 008 ¶ 12 ("Nothing in the Agreement shall prevent WorldVentures from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or other relief available to safeguard and protect WorldVentures' interest prior to, during or following the filing of any arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding."); *see also id.* at 039 § 9.4 ("In addition to monetary damages, the Company may obtain injunctive relief against a Representative in violation of the Agreement, and for any violation of misuse of the Company's trademark, copyright [and] confidential information policies."). However, nothing in the Arbitration Provision precludes any party from seeking injunctive relief in the arbitration proceeding. Furthermore, the AAA Rules, which the parties expressly invoke in the Arbitration Provision, provide that an arbitrator may award injunctive relief. *See* AM. ARBITRATION ASSOC., COMMERCIAL ARBITRATION RULES & MEDIATION PROC. R-37(a) (2013), https://www.adr.org/rules ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief . . . .").

The wholly groundless exception is a narrow one. Given the plain language of the Arbitration Provision and the Court's finding that Plaintiff is not precluded from seeking injunctive relief or rescission in arbitration, the Court finds that there is a "plausible argument that the arbitration agreement requires the merits of the claim to be arbitrated." *Archer*, 878 F.3d at 492. The Arbitration Provision incorporates the AAA Rules, evincing clear and unmistakable evidence of the parties' intent to delegate threshold questions to an arbitrator, including questions regarding

the validity and scope of the arbitration provision itself. Therefore, it is for the arbitrator, and not the Court, to decide threshold questions, including the scope of the arbitration.

### (3) Enforceability

Plaintiff challenges the enforceability of the Arbitration Provision, alleging that the Terms and Policies, including the Arbitration Provision, are illusory and unconscionable. Plaintiff alleges a litany of reasons why the Arbitration Provision is unconscionable, including that WorldVentures' grievance process renders the Terms and Policies unconscionable, and excessive arbitration costs support a finding of unconscionability. *See* Resp. 10-18.[3] However, Plaintiff does not challenge the enforceability of the delegation clause specifically. *See, e.g., id.* at 4 ("The Terms suffer from several fatal flaws rendering them unenforceable. First, the Agreement and Terms are illusory . . . ."); *see also id.* at 13 ("[T]he Terms and Policies are each unconscionable and unenforceable."). Beyond her argument that the "wholly groundless" exception should apply, Plaintiff does not contest the validity of the delegation clause in particular.

In the absence of a challenge specifically to a delegation clause, validity challenges must be sent to the arbitrator. *Homeaway*, 890 F.3d at 554 (citing *Rent-A-Ctr.*, 561 U.S. at 71-72). Plaintiff argues that the Terms and Policies as a whole, including the Arbitration Provision, are unenforceable under Texas law. *See* Resp. 11. Because the challenge is not specific to the delegation clause, Plaintiff must present it to an arbitrator.

### IV. CONCLUSION

For the reasons outlined above, Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings is granted. The Court finds that an agreement, including an arbitration provision, exists between the parties. The Arbitration Provision incorporates the AAA Rules, evincing clear

---

[3] The Court notes that many of Plaintiff's challenges regarding enforceability can be argued against all arbitration provisions, including cost of arbitration and the selection process for a neutral. *See* Resp. 10-18.

and unmistakable evidence of the parties' intent to have the arbitrator decide whether a given claim must be arbitrated. Any challenges to the enforceability or scope of the Arbitration Provision must be decided by the arbitrator. This action will be stayed and administratively closed pending the outcome of arbitration. *See* 9 U.S.C. § 3. The Court directs the Clerk of Court to administratively close this case until such time as the Court orders it to be reopened.

**SO ORDERED.**

SIGNED September //__, 2018.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**